COOLEY LLP
Michael A. Attanasio, Bar No. 151529
mattanasio@cooley.com
Stephen Richards, Bar No. 308868
srichards@cooley.com
Charles Harrison, Bar No. 313028
charrison@cooley.com
4401 Eastgate Mall
San Diego, California  92121-1909
Telephone:  +1 858 550 6000
Facsimile:   +1 858 550-6420

Attorneys for Plaintiff
QUALCOMM INCORPORATED

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUALCOMM INCORPORATED,<br><br>            Plaintiff,<br><br>     v.<br><br>SIYU CONG,<br><br>            Defendant. | Case No. **'20 CV1799 BAS JLB**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## SUMMARY OF THE ACTION

1. This action arises from the misconduct of Siyu Cong ("Cong"), a former engineer for Qualcomm Incorporated ("Qualcomm"). Cong's job duties at Qualcomm authorized her to have access to highly valuable and confidential Qualcomm information, including trade secrets. Cong agreed to safeguard this information and to not disclose it others. But in February 2020, shortly after receiving a job offer to leave Qualcomm for a competitor, Cong uploaded highly confidential Qualcomm documents and source code to personal accounts with Google's Gmail and Drive services and thereafter may have transferred these materials to unknown persons. Qualcomm now brings this action to secure its confidential information and to recover for harm to it caused by Cong's misconduct.

## PARTIES

2. Plaintiff Qualcomm is a publicly traded Delaware company with its principal place of business in San Diego, California.

3. Siyu Cong is an individual who, upon information and belief, resides in Santa Clara County, California.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331 because this action arises under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.* This Court has supplemental jurisdiction over Qualcomm's remaining claims under 28 U.S.C. § 1367.

5. Venue is proper in this Court because a substantial part of the events and omissions giving rise to the claims herein occurred in this district, *see* 28 U.S.C. § 1391(b)(2), and because the parties agreed that any action to enforce their Invention Disclosure, Confidentiality & Proprietary Rights Agreement ("IDA") would be heard "only in a court of competent jurisdiction located in San Diego County, California." A true and correct copy of the IDA is attached hereto as **Exhibit A**.

# FACTUAL ALLEGATIONS

6. Qualcomm is a world leader in the design and production of semiconductor microchips ("chips"). Qualcomm's chips power cellphones, computers, and an increasing number of other modern machines. Qualcomm is also on the vanguard of new chip technologies, and the company's current "5G" technology is ushering in a new age of connectivity and speed for wireless devices.

7. Confidential and trade secret information is at the heart of Qualcomm's business. Qualcomm operates in a fiercely competitive sector, and it devotes immense resources to research and development efforts in order to innovate new technologies and stay ahead of competitors. The company's confidential information is of tremendous commercial value to it and to its rivals. Qualcomm's confidential and trade secret information is also of substantial importance to national security. Qualcomm is a trusted supplier of mission-critical products and services to federal government agencies, and national security programs rely on continued access to Qualcomm products.

8. Cong was hired by Qualcomm on or about July 11, 2016. Before being hired by Qualcomm, and as a condition to her continuing employment, Cong agreed not to use or disclose Qualcomm's secret or confidential information, knowledge, or data except as authorized by Qualcomm. This agreement was memorialized in the parties' IDA, which Cong acknowledged on July 6, 2016.

9. Paragraph 2.1 of the IDA provides that Cong would, in the course of her employment,

> have access to secret or confidential information, knowledge or data, whether trade secrets or not, from Qualcomm, including without limitation secrets and confidential information, knowledge, or data of third parties that Qualcomm might disclose to me or which I might have access to (collectively '**Confidential Information**'), including, but not limited to, . . . matters of a technical nature (such as, without limitation, any methods, know-how, formulae, compositions, processes, discoveries, machines, models, devices, specifications, inventions, computer programs and similar items or research projects), of a business nature (such as, without limitation, any information about cost, profit, purchasing, market, marketing and business plans, sales, forecasts, or

customer and supplier lists), pertaining to future developments (such as, without limitation, any research and development or future marketing or merchandising), matters regarding Qualcomm personnel and any other nonpublic information that has commercial value.

10. And in the same paragraph, Cong agreed that she would

not during or at any time after the termination of my employment with the Company, directly or indirectly, use for myself or others, or disclose or convey to others, any Confidential Information of Qualcomm . . . . except as may be authorized and required by the Company in the course of my employment with the Company . . . .

11. In addition to acknowledging the IDA, Cong specifically underwent training on the proper treatment of Qualcomm's confidential information.

12. Cong's job duties at Qualcomm involved working on "D-PHY and "C-PHY" technologies, chip components that relate to the digital portion of the "physical layer" of a chip. Cong's work, which specifically focused on the physical layer's multimedia functionality, as well the work of her team members, was proprietary, innovative, and valuable. Qualcomm is an industry leader in D-PHY and C-PHY technologies and has spent years developing unique designs that allow it to decrease the size and increase the efficiency of these chip components.

13. As part of her job duties, Cong had access to highly confidential and trade secret Qualcomm information including, among other things, source code files and engineering files relating to projects on which Cong was staffed, as well as the projects on which Cong's team members were staffed. These materials were confidential and highly valuable, particularly to Qualcomm's competitors, who – if they managed to obtain Qualcomm's research – could potentially cut months or years off the development time for their own technologies or discern confidential details of forthcoming Qualcomm products.

14. Unbeknownst to Qualcomm at the time, Cong had received an employment offer from a Qualcomm competitor on January 2, 2020. On the morning of February 4, 2020, she received an email from that company which appeared to contain information relating to her onboarding. Qualcomm computer records

1  indicate that within minutes of receiving this email, Cong entered an internet search for "gmail registration," and thereafter created a new personal email account with Google's Gmail service.

15. After creating this personal Gmail account, Cong began to compile confidential Qualcomm documents and email these documents to the new account. Some of these documents were consolidated into "zip" files, which are files that contain, and often compress, data from other files. The names of the zip files that Cong created corresponded to internal Qualcomm project codenames, and the individual files contained within the zip files were associated with the projects in question.

16. In all, Qualcomm records reflect that on the morning of February 4, 2020, Cong sent at least 61 files to her personal Gmail account containing confidential Qualcomm files or source code. Apparently because some of these files exceeded Gmail's file-size limit, those files were automatically uploaded instead to Cong's personal Google Drive account, which is a cloud storage system linked to a user's Google (and Gmail) account.

17. Approximately 30 minutes after she first began emailing the Qualcomm files to her personal account, Cong deleted the files from her laptop, apparently in an attempt to cover her tracks. Cong understood that uploading Qualcomm's proprietary materials to a personal account violated Qualcomm's policies and her obligations under the IDA. Cong also understood that Qualcomm would not consent to her upload of the materials.

18. Cong's upload of Qualcomm information to her personal Google account violated Qualcomm policies and triggered alerts within Qualcomm's security systems. After Cong did not report for work the next morning, February 5, Qualcomm disabled her badge and log-in credentials.

19. On the afternoon of February 5, 2020, Qualcomm management was able to reach Cong and instructed her to come in for an interview. When she arrived, the

interviewer instructed her to open her newly created Gmail account, which appeared to be empty of all files. Suspicious that Cong had transferred the files, the interviewer requested that she open her other, older Gmail account. Cong refused, instead insisting that she be allowed to take a ten-minute break. When she returned from the break, Cong agreed to open her older Gmail account, but no Qualcomm files were located. Finally, the interviewer requested that she open the Google Drive account associated with her newer Gmail account. When she did so, the interviewer discovered zip files containing Qualcomm information, one of which Cong hastily deleted in an apparent effort to conceal her wrongdoing.

20. The full extent of Cong's misappropriation remains unknown. Shortly after Cong was asked to meet with Qualcomm investigators – but before the meeting occurred, and before Cong was told of its purpose – Cong accessed her Gmail account and, Qualcomm believes, deleted the 61 files she had sent to herself. The files on Cong's Google Drive account, which had been automatically uploaded to that service as a result of exceeding Gmail's file-size limit, were not deleted at the time of the interview, likely because Cong was unaware the files had been automatically uploaded.

21. Although Qualcomm instructed Cong to permanently delete the remaining files, it is unable to independently verify that she complied. In addition, Qualcomm does not know whether Cong transferred Qualcomm's confidential information to others.

22. Many of the files Cong misappropriated have significant value to Qualcomm and would jeopardize its commercial competitiveness if acquired by competitors. Some include source code for Qualcomm technologies, while others contain design information for entire D-PHY and C-PHY components. Qualcomm has spent years optimizing D-PHY and C-PHY designs, and a competitor may be able to cut months or years off its own design process by obtaining this information.

23. While Qualcomm's investigation remains ongoing, it has already suffered damages as a result of Cong's misconduct, and it will continue to suffer further damages unless additional misconduct is enjoined.

## FIRST CLAIM FOR RELIEF

### Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.*

24. Qualcomm realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

25. Qualcomm owns and possesses certain confidential, proprietary, and trade secret information, as alleged above. This confidential, proprietary, and trade secret information relates to products and services that are used, shipped, sold and/or ordered in, or that are intended to be used, sold, shipped, and/or ordered in, interstate or foreign commerce. Qualcomm products are used worldwide.

26. Qualcomm derives independent economic value from the fact that its confidential, proprietary, and trade secret information is not generally known to the public and not readily ascertainable to persons outside Qualcomm, including Qualcomm's competitors. As described herein, Qualcomm has taken, and continues to take, reasonable measures to keep this information secret and confidential. Among other things, Qualcomm (i) requires its employees to execute agreements protecting the confidentiality of Qualcomm's information and to undergo training concerning the proper treatment of confidential Qualcomm data, (ii) limits access to its facilities, (iii) uses encryption and multi-factor authentication tools to safeguard access to its information and to ensure that its sensitive systems and data are protected in the event an account is compromised, and (iv) detects and monitors unauthorized data transfers and other anomalous activity on its network.

27. As part of her duties at Qualcomm, Cong was entrusted with access to Qualcomm's confidential, proprietary, and trade secret information. Cong had, and continues to have, a duty to maintain the secrecy of that information.

28. As set forth herein, in violation of this duty, and without Qualcomm's consent, Cong uploaded confidential and proprietary Qualcomm information to personal Gmail and Google Drive accounts in February 2020. The information uploaded by Cong qualifies as a "trade secret" under the meaning of 18 U.S.C. § 1839(3).

29. By uploading Qualcomm's confidential, proprietary, and trade secret information, Cong committed one or more acts of actual or threatened misappropriation of trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq*.

30. As a direct result of Cong's conduct, Qualcomm has suffered – and, if the conduct is not enjoined, will continue to suffer – harm, including investigation and response costs.

31. Cong's conduct entitles Qualcomm to an injunction based on actual and threatened misappropriation as set forth in 18 U.S.C. § 1836(b)(3)(A)(i).

32. Qualcomm requests that the Court take affirmative action to protect its trade secrets, as set forth in 18 U.S.C. § 1836(b)(3)(A)(ii), including by authorizing an inspection of Cong's computers, personal USB and electronic storage devices, email accounts, and "cloud"-based storage accounts to determine the extent to which Qualcomm trade secrets were wrongfully taken and/or disseminated to others.

33. Cong's misappropriation and disclosure of Qualcomm's trade secrets entitles Qualcomm to monetary damages, fees, and costs, as provided in 18 U.S.C. § 1836(b)(3)(B). Qualcomm is also entitled to recover for Cong's unjust enrichment.

34. Cong's misappropriation of Qualcomm's trade secrets was willful and malicious under the meaning of 18 U.S.C. § 1836(b)(3)(C)-(D), and Qualcomm is therefore entitled to recover exemplary damages and attorney's fees.

/ / /

/ / /

/ / /

## SECOND CLAIM FOR RELIEF

## California Computer Fraud and Abuse Act, California Penal Code § 502

35. Qualcomm realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

36. By uploading confidential Qualcomm documents and code to personal Gmail and Google Drive accounts, Cong violated California Penal Code § 502(c)(1), which forbids knowingly accessing, and without permission using, data, a computer, a computer system, or a computer network in order to wrongfully control or obtain money, property, or data.

37. By uploading confidential Qualcomm documents and code to Gmail and Google Drive, Cong violated California Penal Code § 502(c)(2), which forbids knowingly accessing, and without permission taking, copying, or making use of, data from a computer, computer system, or computer network.

38. As the owner of the data Cong uploaded to Gmail and Google Drive, Qualcomm is entitled to compensatory damages caused by Cong's violation of California Penal Code § 502, including those expenditures reasonably and necessarily incurred by Qualcomm to verify the security of its data, as well as injunctive relief and attorneys' fees. Cal. Penal Code § 502(e)(1)-(2).

39. Cong's violations of California Penal Code § 502 were done with oppression and malice and have subjected and will continue to subject Qualcomm to cruel and unjust hardship in conscious disregard of Qualcomm's rights, such that Qualcomm is entitled to an award of exemplary and punitive damages according to proof. Cal. Penal Code § 502(e)(4).

## THIRD CLAIM FOR RELIEF

## Breach of Contract

40. Qualcomm realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

41. Qualcomm and Cong are parties to the IDA that Cong acknowledged electronically on July 6, 2016. The IDA is governed by California law.

42. The IDA provides that "Confidential Information" includes "any methods, know-how, formulae, compositions, processes, discoveries, machines, models, devices, specifications, inventions, computer programs and similar items or research projects," as well as "any research and development."

43. Under the terms of the IDA, Cong was prohibited from using Confidential Information, or "disclos[ing] or convey[ing]" Confidential Information to others, "except as may be authorized and required by [Qualcomm] in the course of [Cong's] employment with the Company."

44. Despite the express terms of the IDA, Cong breached her contractual obligations to Qualcomm by uploading Confidential Information to her Gmail and Google Drive accounts in February 2020. Qualcomm neither required nor authorized Cong to do so.

45. As a direct and proximate result of the foregoing breach, Qualcomm has suffered, and will continue to suffer, damages in an amount to be proven at trial. Qualcomm has also suffered immediate and irreparable harm and will continue to suffer such harm until Cong's breaches are enjoined. Cong acknowledged that if she were to violate the IDA, Qualcomm would "suffer irreparable and continuing damage for which money damages are insufficient," and that Qualcomm would be "entitled to injunctive relief." Qualcomm is entitled to injunctive relief sufficient to protect its rights under the IDA.

## PRAYER FOR RELIEF

Wherefore, Qualcomm respectfully prays for relief as follows:

A. For an order enjoining Cong and all persons or entities acting in concert or participation with her from obtaining, using, or disclosing any of Qualcomm's confidential information or trade secrets;

B. For compensatory damages in an amount to be proven at trial;

C. For punitive and exemplary damages;

D. For prejudgment interest according to law;

E. For recovery of attorneys' fees, costs, and expenses incurred in this action; and

F. For such other and further relief as this Court may deem just and proper.

Dated:  September 11, 2020        COOLEY LLP

By: */s/ Michael A. Attanasio*
    Michael A. Attanasio

Attorneys for Plaintiff
QUALCOMM INCORPORATED

Email: mattanasio@cooley.com

## INDEX TO EXHIBIT

| No. | Description | Page(s) |
|---|---|---|
| A | Invention Disclosure, Confidentiality & Proprietary Rights Agreement | 001-005 |

# Exhibit A

**MySource**

 Print

**Submission for Siyu Cong employee #118473 was recorded on 07/06/2016**



**INVENTION DISCLOSURE, CONFIDENTIALITY & PROPRIETARY RIGHTS AGREEMENT (the "Agreement")**

PLEASE READ THE FOLLOWING FULLY AND CAREFULLY, AND INDICATE YOUR AGREEMENT BY CLICKING ON THE "I AGREE" BUTTON AT THE VERY END OF THIS DOCUMENT.

In connection with my employment by Qualcomm Incorporated, Qualcomm Technologies, Inc. or one of their respective subsidiaries (such employer is the **'Company'**, and, collectively, such entities are **'Qualcomm'** or **'Qualcomm Entities'**), or if presently employed, then in connection with my continued employment, and in consideration of the compensation paid to me during the period of my employment, such period of employment to be for so long as may remain agreeable at the will of the Company and/or me, I agree as follows:

**1. Inventions And Works of Authorship**

    1.1. <u>Inventions & Works Belong to Company Unless Excluded by this Agreement.</u> I understand that all 'Inventions' and 'Works' that are 'Created' by me alone or jointly with others (definitions below) at any time during my period of employment with the Company shall be the sole and exclusive property of the Company, and subject to the Company's direction and control, unless they are 'Excluded Inventions and/or Works' as defined in Section 1.2 of this Agreement.

    Except for the Excluded Inventions and/or Works (as defined in Section 1.2 of this Agreement), I hereby irrevocably assign, transfer and convey to the Company, its successors and assigns, all of my entire right, title, and interest in and to any and all Inventions and Works that are Created by me alone or jointly with others at any time during my period of employment with the Company, including without limitation all patent applications and patents worldwide therefor, and all rights of priority derived therefrom under any international conventions, treaties, or agreements. The foregoing assignment, transfer and conveyance shall operate automatically upon the Creation of each such Invention and Work.

    To the extent any of the rights, title and interest in and to any such Works or Inventions cannot under applicable law be assigned by me to the Company, I hereby grant to the Company an exclusive, royalty-free, transferable, irrevocable, worldwide, fully paid-up license (with rights to sublicense through multiple tiers of sublicensees) to fully use, practice and exploit those non-assignable rights, title and interest, including, but not limited to, the right to make, use, sell, offer for sale, import, have made, and have sold, products and services. To the extent any of the rights, title and interest in and to any such Works or Inventions can neither be assigned nor licensed by me to the Company, I hereby irrevocably waive and agree never to assert the non-assignable and non-licensable rights, title and interest against Qualcomm, any of Qualcomm's successors in interest, or any of Qualcomm's customers.

    I acknowledge and agree that the Company, its successors and assigns have the sole and exclusive right to file or not to file for domestic or foreign patents on any or all Inventions, or for domestic or foreign copyrights and trademarks on any or all Works, as determined in their sole discretion.

    *Definitions:*

    **'Created'** (and **'Creation'**) is when (i) an Invention is conceived or reduced to practice, or (ii) a Work is created, developed, made, authored, or fixed in a tangible medium of expression.

    **'Invention'** is any invention, discovery, development, design, formula, process, improvement, idea, innovation, know-how or information, in each case whether patentable or not, that is Created by me, either solely or in concert with others.

    **'Work'** is any work of authorship or information, including, but not limited to, any computer program, publishable article, mask work, trademark, service mark, trade name, trade dress, sales brochure, work of art, or technical report, in each case whether copyrightable or not, that are Created by me, either solely or in concert with others. I acknowledge that all Works that are subject to copyright and that are Created by me within the scope of my employment constitute a 'work for hire' within the meaning of Title 17 United States Code Sections 101 and 201(b).

Exhibit A, Page 001

1.2. <u>Excluded Inventions & Works are not Assigned to Company.</u> The following Inventions and/or Work described in Section 1.2(a) - 1.2(c) below are collectively referred to as the **'Excluded Inventions and/or Works'** and are not assigned to Company:

   (a) Any Inventions and/or Works that I have listed (by descriptive title for purposes of identification) in my Statement of Excepted Inventions and Works in <u>Attachment 1</u> to this Agreement, are all of the Inventions and Works Created prior to my employment by the Company which I consider to be my property or in which I claim any ownership interest or title, either alone or jointly with a third party. I agree to provide copies of all documentation in support of my claim to any such Inventions and Works if so requested by the Company. I understand that my listing of any Inventions and Works in <u>Attachment 1</u> does not establish that the Company agrees with my claim to the ownership over any such Inventions and Works; instead, this list of Inventions and Works in <u>Attachment 1</u> merely serves as a record of the pre-employment Inventions and Works in which I claim to have an ownership interest

   (b) Any Inventions and/or Works that meet all of the following criteria:
   - which are developed by me, alone or jointly with others, entirely on my own time; and
   - for which no equipment, supplies, facilities, or trade-secret information of Qualcomm (or of any third party which Qualcomm is authorized to use) are used; and
   - which do not result from any work performed by me for the Company; and
   - which do not relate to the business of Qualcomm, its actual or demonstrably anticipated research or development or its design, experimental or production work.

   (c) Any Work Created by me during my employment with the Company that is subject to an open source license that (i) the Company determines, in its sole discretion that the Company will not acquire ownership of the copyrights in such Works and (ii) for which an authorized Executive Officer of the Company or a Vice President or above in the Open Source Legal Group (or either's authorized designee) acknowledges, in writing (which may be electronic), that I may retain ownership of the copyrights in such Works (the **'OS Works'**); provided that I hereby grant to the Company a fully paid-up, royalty free, transferable, irrevocable, worldwide license with a right to sublicense through multiple tiers of sublicensees, to such OS Works, and the Company, in its sole discretion, may fully exploit and use such OS Works in any manner whatsoever.

   I understand that I am prohibited from using at the Company, or incorporating into anything Created by me at or for the Company, any of my Excluded Inventions and/or Works unless I receive written permission to do so from (a) a Company Vice President or Senior Vice President in my immediate management chain, and (b) a Senior Vice President, Legal Counsel, in the Corporate Legal Department, or the Chief Patent Counsel of the Patent Department. To the extent that I so use or incorporate any of my Excluded Inventions and/or Works with or without such written permission, I hereby grant to the Company a fully paid-up, royalty free, transferable, irrevocable, worldwide license with a right to sublicense through multiple tiers of sublicensees, to such Excluded Inventions and/or Works, and the Company, in its sole discretion, may fully exploit, practice and use such Excluded Inventions and/or Works in any manner whatsoever.

   Except as specifically described in the Statement of Excepted Inventions and Works in <u>Attachment 1</u>, I represent and warrant there are no Inventions or Works previously Created by me which I claim to be an Excluded Invention and/or Work.

1.3. <u>I Agree to Disclose All Inventions and Works.</u> I shall promptly, but in no case later than thirty (30) days from Creation, fully disclose to the Company all Inventions and Works Created by me, either solely or in concert with others, during the period of my employment with the Company, together with any period prior to the date of this Agreement if I have not signed this Agreement until after my start of employment with Company. I agree to disclose all Inventions and Works using forms provided by the Company.

1.4. <u>I Agree to Assist the Company.</u> I agree, upon request by the Company, and without compensation (other than with respect to my requested reimbursement of my reasonable and actual out-of-pocket expense which have been pre-approved by the Company in writing), to do all lawful acts including the execution of all papers and lawful oaths and the giving of testimony that may be necessary or desirable in obtaining, sustaining, reissuing, renewing, and enforcing United States and foreign Letters Patent and copyright on all Inventions and Works herein assigned to the Company, including without limitation to assist the Company in any controversy or legal proceeding relating to all such Inventions and Works. I further agree to comply with provisions of contracts between the Company and contractors or any agency of the United States Government with whom the Company is doing business, including all provisions relating to invention rights, works of authorship or to the safeguarding of information. If the Company is unable for any reason to secure my signature to any document required to file, prosecute, register or memorialize the assignment of any rights or application or to enforce any right to or under any Inventions and Works Created by me and assigned to the Company under this Agreement, I hereby irrevocably designate and appoint the Company and the Company's duly authorized officers and agents as my agents and attorneys in fact to act for and on my behalf and instead of me to take all lawfully permitted acts to further the filing, prosecution, registration, memorialization of assignment, issuance, and enforcement of rights to or under the Inventions and Works Created by me and assigned to the Company under this Agreement, all with the same legal force and effect as if executed by me. The foregoing is deemed a power coupled with an interest and is irrevocable.

1.5. <u>Presumption of Ownership.</u> I agree that any Invention disclosed by me to a third person, or described in a patent application filed by me or on my behalf within one (1) year following the termination of my employment with the Company, shall be presumed to be an Invention Created by me during the term of my employment with the Company and subject to the terms of this Agreement unless proven by me to Company's reasonable satisfaction to have been Created by me following the termination of my employment with the Company. Likewise, I agree that any Work disclosed by me to a third person, or in a copyright application filed by me or on my behalf within (1) one year following the termination of my employment with the Company, shall be presumed to be a Work Created by me during the term of my employment with the Company and subject to the terms of this Agreement unless proven by me to Company's reasonable satisfaction to have been Created by me following the termination of my employment with the Company.

1.6. <u>California Labor Code Sections 2870-2872.</u> California Labor Code Section 2872 places the burden of proof on the employee. I hereby acknowledge that I have received a copy of California Labor Code Sections 2870 through 2872 (See <u>Attachment 2</u>).

**2. Nondisclosure Of Confidential Information**

2.1. <u>Definition; Use and Disclosure of Confidential Information.</u> In the course of my employment, I acknowledge that I will have access to secret or confidential information, knowledge or data, whether trade secrets or not, from Qualcomm, including without limitation secrets and confidential information, knowledge or data of third parties that Qualcomm might disclose to me or which I might have access to (collectively '**Confidential Information**'), including, but not limited to, all Inventions and Works assigned by me to the Company, matters of a technical nature (such as, without limitation, any methods, know-how, formulae, compositions, processes, discoveries, machines, models, devices, specifications, inventions, computer programs and similar items or research projects), of a business nature (such as, without limitation, any information about cost, profit, purchasing, market, marketing and business plans, sales, forecasts, or customer and supplier lists), pertaining to future developments (such as, without limitation, any research and development or future marketing or merchandising), matters regarding Qualcomm personnel and any other nonpublic information that has commercial value. I agree that I will not during or at any time after the termination of my employment with the Company, directly or indirectly, use for myself or others, or disclose or convey to others, any Confidential Information of Qualcomm or of others provided to Qualcomm under any agreement of secrecy or confidentiality for planned, contemplated, or actual use by Qualcomm in the course of business, except as may be authorized and required by the Company in the course of my employment with the Company, provided however that any such authorization or requirement for disclosure or use of Confidential Information after the termination of my employment with the Company must be in a writing signed by an authorized representative of the Company. The provisions of this paragraph shall not apply after Confidential Information of Qualcomm has been voluntarily disclosed by Qualcomm to the general public without any obligation of secrecy or confidentiality.

2.2. <u>Ownership of Confidential Information.</u> All Confidential Information, records, computer programs, computer-stored information, computer disks and other media, files, drawings, sketches, blueprints, manuals, letters, notes, notebooks, reports, memoranda, customer lists, documents, equipment and the like relating in any manner to Qualcomm's business and all intellectual property rights in each of the foregoing, whether prepared by me or not, shall be and remain Qualcomm's sole and exclusive property. I will not make unauthorized copies of any of the foregoing. I agree to return to the Company upon termination of my employment, or upon the Company's request, all tangible forms of such information, including but not limited to drawings, computerized data or programs, documents, devices, models, trade secrets, marketing information, data, specifications, inventions, processes, or any other material, together with all copies thereof and extracts therefrom. I further agree not to make or retain any copies or extracts of any of the foregoing, and will so represent to the Company in writing upon termination of my employment or upon the Company's request. In addition, at any time upon the Company's request, and when my employment with the Company is over, I will return all Company property, including but not limited to, keys, pass cards, identification cards, computers, printers, pagers, cell phones, smartphones, personal digital assistants or similar items or devices that the Company has provided to me. If requested by the Company, I will provide Company with a written certification of my compliance with my obligations under this Section.

2.3. <u>Publications.</u> I agree to follow the applicable Company policies and procedures to obtain the written consent of the Company prior to any publication, oral or written, of any information regarding any aspect of Qualcomm's business, customers, suppliers, employees, shareholders, directors or officers. I acknowledge and agree that the Company has the sole discretion to determine whether and to the extent such information may be published, and that the Company may exercise its rights regarding pre-publication approval or disapproval, without any liability whatsoever to me.

**3. No Conflicting Agreement or Disclosure of Third Party Confidential Information**

3.1. <u>No Third Party Agreements.</u> I represent and warrant that I have no agreement with any third party that would preclude or impair me from working at the Company, from devoting my full and best efforts to the Company, or from fully complying with the obligations required on my part to be performed under the terms of this Agreement. I agree that I will immediately inform the Company if any change in my employment, such as a change in my position or duties, would cause me to violate any agreement I may have with any third party.

3.2. <u>No Third Party Information.</u> I represent and warrant that I have not brought, and will not bring or use in the performance of my duties at the Company, any proprietary or confidential information, whether or not in writing, of a former employer or any third party without such employer's or third party's written authorization. I further agree not to disclose to Qualcomm in the course of my employment with the Company any confidential information or trade secrets of any former employer or any other third party. I represent and warrant to the Company that my employment with the Company will not require me to violate any obligation to or confidence with any other party, including, but not limited to, any of my former employers.

**4. No Conflict of Interest**

4.1. I understand that as an employee of the Company, I have a duty of loyalty to the Company. In fulfilling that duty, I will not engage in any activity (including, but not limited to, outside employment, board memberships, outside business activities or investments) that would create or give the appearance of any conflict of interest between me and Qualcomm's interests.

If I wish to engage in any activity that could create or give the appearance of a potential or actual conflict of interest between me and Qualcomm, I agree that I must and shall obtain advance written approval from the Company to engage in such activity, as required by the Company's policies and procedures.

4.2. I understand that it is a conflict of interest and a breach of this Agreement for me to attempt to or purport to assign or agree to assign any of my Inventions or Works (other than the Excluded Inventions and/or Works) to anyone other than Qualcomm.

**5. Noncompetition and Non-Solicitation**

5.1. <u>Noncompetition.</u> I agree I will not, during the course of employment, engage in any activity that is competitive with any activity of Qualcomm, and will abide by all Company policies regarding any outside employment. For purposes of this paragraph, competitive activity shall include, without limitation, the forming or making plans to form a business entity that is competitive with any business activity of Qualcomm.

5.2. <u>Non-Solicitation.</u> During my employment with the Company and for one (1) year thereafter, I will not solicit, encourage, or cause others to solicit or encourage any employees of Qualcomm to terminate their employment with Qualcomm. This obligation is in addition to my obligation not to disclose any Confidential Information regarding any employee of Qualcomm.

**6. Miscellaneous**

6.1. <u>Survival of Terms.</u> I understand and agree that the obligations and undertakings in this Agreement that are meant to survive shall continue in full force and effect after the termination of my employment, regardless of the reason for the termination of my employment. Nothing contained in this Agreement changes the at will nature of my employment at the Company.

6.2. <u>No Assignment.</u> I shall not assign all or any portion of my rights, duties or obligations under this Agreement. Any such attempted assignment shall be null and void from inception.

6.3. <u>Employment with any of the Qualcomm Entities.</u> I understand and agree that, in the event that my employment transfers from the Company to any other Qualcomm Entity, without any interruption in employment, this Agreement shall automatically, and with no further action required, be assigned by the Company to such new employer. I understand and agree that any such new employer shall become "the Company" for all purposes under this Agreement.

6.4. <u>Severability.</u> If any provision in this Agreement is held to be invalid or unenforceable in whole or in part (the **'Invalid Provision'**), the remaining portions of such provision (if any) and the other provisions in this Agreement will remain in full force and effect, and the Invalid Provision will remain in effect to the maximum extent allowed by law.

6.5. <u>Successors and Assigns.</u> The provisions of this Agreement shall inure to the benefit of and may be enforced by the Company, its successors, or assigns (including pursuant to Section 6.3), and shall be binding upon me, my executors, administrators, and other legal representatives.

6.6. <u>Time of Essence.</u> Time is of the essence in the performance of all obligations under this Agreement.

6.7. <u>No Amendment or Waiver.</u> This Agreement may not be amended or modified, in whole or in part, except in a writing that is signed by an authorized Executive Officer of the Company and me. If the Company waives any term, provision or breach by me of this Agreement, such waiver shall not be effective unless it is in writing and signed by an authorized Executive Officer of the Company. Any such waiver shall be effective only in the specific instance and the purpose for which it is given.

6.8. <u>Effectiveness.</u> This Agreement, if executed after the commencement of my employment, is hereby specifically made retroactive and effective as of the first day of my employment.

6.9. <u>Entire Agreement.</u> This Agreement supersedes any agreement, discussion, understanding, commitment or representation, whether written or verbal, that may have previously been made or executed by the parties relating to this subject matter.

6.10. <u>Governing Law and Forum.</u> This Agreement shall be governed by and construed according to the laws of the State of California, excluding conflicts of law principles that would result in the application of the laws of a different jurisdiction. Any action to enforce or construe this Agreement, or any of the provisions hereof, shall be heard only in a court of competent jurisdiction located in San Diego County, California and the Company and I each irrevocably consent to the exclusive personal jurisdiction of such courts, except that in actions seeking to enforce any order or any judgment of any such court, personal jurisdiction will be nonexclusive. Additionally, notwithstanding anything in the foregoing to the contrary, a claim for equitable relief arising out of or related to this Agreement may be brought in any court of competent jurisdiction.

6.11. <u>Injunctive Relief.</u> I agree that if I violate this Agreement, the Company will suffer irreparable and continuing damage for which money damages are insufficient, and the Company is entitled to injunctive relief, a decree for specific performance, and all other relief as may be proper (including money damages if appropriate), to the extent permitted by law, without the need to post a bond.

ATTACHMENTS:

1. Statement of Excepted Inventions and Works
2. California Labor Code Sections 2870-2872

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ATTACHMENT 1

### STATEMENT OF EXCEPTED INVENTIONS AND WORKS

As provided in Section 1.2(a) of this Agreement, listed below by descriptive title for purposes of identification, are all of the Inventions and Works Created prior to my employment with the Company which I consider my property or in which I claim any ownership interest or title.

**If this Attachment is blank, then you represent, warrant and agree that there are no such Inventions or Works.**

For the avoidance of doubt, only those Inventions and/or Works in which you currently hold title or in which you currently have an ownership interest should be listed on this Attachment.

**Excepted Inventions** (If your text exceeds 4000 characters, please let us know by clicking on the feedback link located at the bottom of this page)
**Please do not input any text here if the answer is 'None'. Only input text if you have any inventions or works that predate your employment that you believe are your personal property and subject to this agreement.**
**Excepted Works** (If your text exceeds 4000 characters, please let us know by clicking on the feedback link located at the bottom of this page)
**Please do Not input any text here if the answer is 'None'. Only input text if you have any inventions or works that predate your employment that you believe are your personal property and subject to this agreement.**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ATTACHMENT 2

### CALIFORNIA LABOR CODE SECTIONS 2870-2872

Section 2870.

(a) Any provision in an employment agreement which provides that an employee shall assign or offer to assign any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

    (1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

    (2) Result from any work performed by the employee for the employer.

(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to assign under this subdivision (a), the provision is against the public policy of this state and is unenforceable.

Section 2871.

No employer shall require a provision made void and unenforceable by Section 2870 as a condition of employment or continued employment. Nothing in this article shall be construed to forbid or restrict the right of an employer to provide in contracts of employment for disclosure, provided that such disclosures be received in confidence, of all of the employee's inventions made solely or jointly with others during the term of his or her employment, a review process by the employer to determine such issues as may arise, and, for full title to certain patents and inventions to be in the United States, as required by contracts between the employer and the United States or any of its agencies.

Section 2872.

If an employment agreement entered into after January 1, 1980 contains a provision requiring the employee to assign or offer to assign any of his or her rights in any invention to his or her employer, the employer must also, at the time the agreement is made, provide a written notification to the employee that the agreement does not apply to any invention which qualifies fully under the provisions of Section 2870. In any suit or action arising thereunder, the burden of proof shall be on the employee claiming the benefits of its provisions.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

INDICATE YOUR AGREEMENT TO TERMS OF "**INVENTION DISCLOSURE, CONFIDENTIALITY & PROPRIETARY RIGHTS AGREEMENT**" HERE:

**By clicking the 'I Agree' button below, I am agreeing to conduct this transaction electronically, I am agreeing to all the terms and conditions set forth above, and that I have accurately and completely filled out the Statement of Excepted Inventions and Works. I understand that clicking the 'I Agree' button has the same effect as if I had signed a paper copy of the Agreement.**

If you have questions,please contact ✉ **IDA**　　　　　　　　　　　　　　　　　　　　　Last Modified: **12/02/2016**

☑ **Submission for Siyu Cong employee #118473 was recorded on 07/06/2016**